UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEFFREY W. MONROE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>INDIANA DEPARTMENT OF )<br>TRANSPORTATION, )<br>)<br>Defendant. ) | CASE NO. 1:05-cv-1163-DFH-WTL |

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Jeffrey E. Monroe has brought this action against his employer, Indiana Department of Transportation ("INDOT"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Monroe claims that the defendant unlawfully discriminated against him because of his sex and retaliated against him for reporting what he believed to be sex discrimination. INDOT denies Monroe's allegations and has moved for summary judgment on both claims. For the reasons explained below, INDOT's motion for summary judgment is granted in part and denied in part. When viewed through the lens of a summary judgment motion, the evidence here would not allow a reasonable jury to infer that INDOT retaliated against Monroe for engaging in activity protected by Title VII. However, viewed through that same lens, the evidence would allow a reasonable jury to conclude that Monroe was discriminated against because of his sex when INDOT treated him less favorably than a similarly situated female employee.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment should be granted only where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only genuine disputes over material facts can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Id.*

In deciding a motion for summary judgment, the court may not make credibility determinations, weigh the evidence, or choose from among different reasonable inferences that might be drawn from the evidence. *Paz v. Wauconda Healthcare and Rehabilitation Centre, LLC*, 464 F.3d 659, 664 (7th Cir. 2006) (reversing summary judgment); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (reversing summary judgment). "[B]ecause summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court must view the evidence in the light reasonably most favorable to the non-moving party, giving him the benefit of conflicts in the evidence and the most

favorable reasonable inferences. *Paz*, 464 F.3d at 664; *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 754 (7th Cir. 2006). The court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge*, 24 F.3d at 920. Accordingly, the factual statements in this decision are not necessarily accurate but reflect the evidence in light of the summary judgment standard.

*Facts for Summary Judgment*

Plaintiff Jeffrey Monroe began working for INDOT in January 1992. Over the course of some five years he worked his way up to the position of unit foreman, a position he held for approximately seven and a half years. In November 2003 Monroe started having a personal relationship with Eryn Hays, an operations engineer at INDOT. Hays was the direct supervisor of Monroe's boss. She acted as Monroe's supervisor when his boss was not there. Monroe Dep. at 14. Hays also held the "number two" position in INDOT's Greenfield District after district director Robert Williams. *Id.* at 39. In approximately March 2004, the personal relationship between Monroe and Hays ended acrimoniously. On March 19, 2004 Monroe called an INDOT radio operator, Heather Perguson, and had a conversation with her about Hays. On March 22, 2004 Perguson gave a written statement to Williams in which she complained that Monroe made several negative remarks about Hays during their March 19th phone conversation that were of an offensive and sexual nature. See Def. Ex. 6.

Also on March 19, 2004, Hays filed an INDOT sexual harassment claim against Monroe. On March 22, 2004, unaware of the sexual harassment charge that had been filed against him, Monroe contacted Tim Jeffers, who was then Deputy Commissioner for INDOT, the number two official in the state agency. Jeffers told Monroe that district director Williams had already informed him of Monroe's relationship with Hays. Monroe told Jeffers that he felt Hays was using her role as acting district director – a position she held because Williams was out of town – to harass him, and that he feared further retaliation. Monroe Dep. at 50-52. Jeffers told Monroe that he would look into the matter immediately. Hays was removed from the position of acting district director the same day. *Id.* at 53. Bill Jones, a foreman at INDOT's Greenfield facility, informed Monroe that Hays "wanted his head on a platter." *Id.* at 50-51.

The sexual harassment charge filed by Hays was investigated by Carlos Castillo, manager of the Equal Employment Opportunity Section for INDOT. As part of his investigation, Castillo interviewed Monroe. During the interview, Monroe complained that Hays had subjected him to sexual harassment. *Id.* at 20. Castillo commented orally that he felt it was Hays who was sexually harassing Monroe. Monroe Dep. at 50-51. Monroe did not file any formal complaint against Hays. There was no documentation reflecting Castillo's comment (as recounted by Monroe), nor is there any evidence indicating that Castillo informed any other INDOT officials of any complaint by Monroe of alleged sexual harassment by Hays.

On April 7, 2004, Williams provided Monroe with notice of a pre-disciplinary meeting that was scheduled for April 14, 2004. The meeting was held as scheduled and a Report of Disciplinary Action was issued on April 16, 2004 that found Monroe had violated Work Rule No.11, "abuse of co-workers," and Work Rule No. 28, "general misconduct." The report stated that Monroe had "called the District radio room 3 different times, intoxicated, using sexually explicit language, and calling the operations engineer derogatory names." Monroe was demoted two-steps to the position of Maintenance Worker III.

On June 26, 2004 Castillo issued his findings on Hays' sexual harassment complaint against Monroe. The report stated:

> Although a Hostile Working Environment of sexual harassment does not exist in this charge, an act of harassment has occurred. Both parties were involved in a consensual relationship that should not have taken place due to chain of command concerns and associated INDOT duties and responsibilities. Disciplinary action should be taken against both Mr. Monroe and Ms. Hays to prevent future incidents and to send a clear message that behavior of this nature will not be tolerated, that incidents of this nature waste time and valuable resources to investigate and [bring] discredit to INDOT.

The report noted that Monroe was demoted on April 16 from Unit Foreman to Maintenance Worker III and stated that further violation would be cause for dismissal. The report also noted that on April 23, 2004, Hays received a five day suspension for violation of Work Rule No. 9, "improper use of state equipment," and Work Rule No. 10, "gross negligence." It stated that further violation would

be cause for dismissal or demotion. The report did not recommend further discipline and concluded: "This charge is closed."

In July 2004 Monroe applied for a one-step promotion to the position of crew leader. He was interviewed for the position by subdistrict manager Joe Castelo. On July 16, 2004 Castelo informed Monroe that he had been awarded the position and Monroe submitted the necessary paperwork to effectuate the promotion. Monroe Dep. at 35. Williams approved the promotion a few days later. *Id.* at 39. Two or three days after Williams' approval, however, Monroe was informed that his promotion had been revoked. *Id.* at 9, 45. Monroe was informed by Castelo that he had to rescind the promotion because Hays had "raised Cane [sic] about it" and made some phone calls "downtown" (INDOT headquarters). *Id.* at 9. Castelo told Monroe that Hays had called him and stated that if he liked his job then he had "better not recommend [Monroe] for any promotions." *Id.* at 36. Castelo further stated, "I tried to promote you . . . . It's beyond me." *Id.*

Sometime in August 2004, after Monroe had his promotion rescinded, Hays called Monroe's cell phone and said something to the effect of: "Why don't you quit trying to apply for promotions? As long as I'm at the district no one out here is going to hire you!" *Id.* at 18, 43. Monroe alleges that it was "pretty common knowledge around there that as long as [Hays] was around I was going nowhere."

*Id.* at 50. Monroe was promoted back to his original position of Unit Foreman in August 2005, after Hays left the Greenfield district. *Id.* at 11, 39, 50.

Additional facts are noted below as needed, keeping in mind the standard applicable to a motion for summary judgment.

*Discussion*

Title VII of the Civil Rights Act of 1964 prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Monroe advances two Title VII claims against INDOT: (1) that the decision to demote him in April 2004 was motivated by sex discrimination, and (2) that INDOT's revocation or denial of his July 2004 promotion was in retaliation for complaining of sexual harassment.

I.   *Title VII Sex Discrimination Claim*

A plaintiff may prove discrimination by the direct or indirect method. *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999). Monroe does not offer direct evidence of sex discrimination and seeks to prove his claim using the indirect burden-shifting approach adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, an employee must first come forward with evidence of a prima facie case of

discrimination. *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). If the employee offers evidence supporting a prima facie case, a presumption of discrimination arises, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking the adverse employment action. *Id.* If the employer provides such a reason, the burden then shifts back to the employee to prove by a preponderance of the evidence that the employer's stated reason is a false pretext, a lie, from which a jury might infer that the real reason was unlawful discrimination. *Vakharia*, 190 F.3d at 806-07; *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999).

To establish a prima facie case of sex discrimination under the indirect method of proof, Monroe must show: (1) he was a member of a protected class; (2) he was meeting INDOT's legitimate performance expectations; (3) he was subjected to an adverse employment action; and (4) he was treated less favorably than similarly situated female employees. *Rhodes v. Illinois Dep't of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

There is no dispute as to the first and third elements of the prima facie case.[1] Because this is a case alleging discriminatory discipline, the second

---

[1] The Seventh Circuit has stated that the conventional *McDonnell Douglas* framework is not very helpful for reverse-discrimination cases such as this. *Gore v. Indiana University* 416 F.3d 590, 592 (7th Cir. 2005). In cases of reverse discrimination, "'the first prong of the *McDonnell* test cannot be used.'" 416 F.3d (continued...)

element of the prima facie case essentially drops out or merges into the fourth element, so that the plaintiff must show that he was treated less favorably than other persons not in the protected class who committed similar violations. *E.g.*, *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 728 (7th Cir. 2004), citing *Grayson v. O'Neill*, 308 F.3d 808, 818 (7th Cir. 2002), and *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999). INDOT argues that Monroe cannot meet his burden of proving the fourth element, that he was treated less favorably than any similarly situated female employees.

To show that he was disciplined more severely than a similarly situated female employee, Monroe must show that he was situated similarly with respect to performance, qualifications, and conduct. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). This normally requires a showing that both employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or their employer's treatment

---

[1](...continued)
at 592, quoting *Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003). A male plaintiff alleging gender discrimination must show something more than the fact that he is gendered, which is "a non-issue because everyone is male or female." *Gore*, 416 F.3d at 592-93, quoting *Steinhauer v. DeGolier*, 359 F.3d 481, 484 (7th Cir. 2004). Rather, the plaintiff in such cases "'must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites [or men] or evidence that there is something 'fishy' about the facts at hand.'" *Id.*, quoting *Phelan*, 347 F.3d at 684. Since the defendant does not raise this issue in its motion for summary judgment, the court will not do so either. See *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006) (district court should not base summary judgment on grounds not raised by moving party).

of them. *Id.* at 617-18, citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Monroe compares himself to Hays for these purposes. He and Hays dealt with the same supervisor insofar as they both worked under and were subject to the discipline of the decision-makers in this case, Greenfield District Director Robert Williams and Deputy Commissioner Tim Jeffers. Both Monroe and Hays were subject to the same standards insofar as they had to conform their conduct to the rules and regulations set forth in the INDOT employee handbook.

INDOT argues that Monroe cannot show that he was similarly situated with respect to conduct because he cannot demonstrate that a female INDOT employee had called into work after drinking, made derogatory and sexually explicit comments about one employee to another employee, and was not disciplined for such conduct in the same way that Monroe was. This argument defines "similar conduct" in too narrow a fashion. Under this approach, practically no prima facie case for discrimination could ever be made. People rarely engage in precisely identical behavior. As the Seventh Circuit has pointed out, "an employee need not show complete identity in comparing himself to the better treated employee . . . ." *Id.* at 618, citing *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998).

The proper frame of reference in evaluating whether Monroe and Hays engaged in similar conduct is their personal relationship. The June 26 report of findings on Hays' sexual harassment complaint against Monroe stated: "Both parties were involved in a consensual relationship that should not have taken place . . . . Disciplinary action should be taken against both Mr. Monroe and Ms. Hays to prevent future incidents and to send a clear message that behavior of this nature will not be tolerated . . . ." The report did not differentiate between the two in terms of the severity of their conduct, at least as a matter of law. INDOT meted out unequal discipline. Hays received a five day suspension and Monroe received a two-step demotion. Although Monroe and Hays were both disciplined before the report of findings on Hays' sexual harassment complaint was released, the report noted the discipline both had received and that the "charge is closed." A reasonable jury could conclude that Monroe and Hays were disciplined for their personal relationship and its effect on their work, and that the difference in punishments was the result of sex discrimination. Summary judgment is not available on that ground.

INDOT argues that even if Monroe establishes a prima facie case of discrimination, it is still entitled to summary judgment because it had a legitimate, non-discriminatory reason for demoting Monroe that was not a pretext for discrimination. INDOT claims that Monroe was demoted for the legitimate reason of disciplining him for derogatory and sexually explicit remarks he made during his March 19 telephone call to the radio operator.

An employee may establish pretext by proving that the employer's proffered reason is not the actual reason for the adverse employment action.[2]  "[I]f the stated reason, even if actually present to the mind of the employer, wasn't what induced him to take the challenged employment action, it was a pretext." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006).

How does one go about proving that a proffered reason was only a pretext? Monroe offers evidence that INDOT employees use profanity when dealing with fellow employees often enough, with little or no consequence, that it is hardly noteworthy, let alone reason for a two-step demotion.  See Monroe Dep. 27-28. "When the sincerity of an employer's asserted reasons for discharging an employee is cast into doubt, a factfinder may reasonably infer that unlawful discrimination was the true motivation."  *Stalter v. Wal-Mart Stores, Inc.* 195 F.3d 285, 289 (7th Cir. 1999), citing *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 303 (7th Cir. 1996).  Evidence that the punishment doled out was grossly excessive in relation to the offense committed tends to undermine the honesty and sincerity of INDOT's proffered reason.  See *Stalter*, 195 F.3d at 289-90 (reversing summary judgment for employer who fired employee for theft after he ate snack chips from

---

[2]Monroe contends that he may establish pretext by proving one of the following:  (1) the reason proffered by the employer is factually baseless; (2) the proffered reason is not the actual reason for the adverse employment action; or (3) the proffered reason is insufficient to warrant the adverse action.  Recently, however, the Seventh Circuit explicitly abandoned the first and third tests.  See *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417-19 (7th Cir. 2006) (finding that test number two "is all the law needs"); see also *Eiter v. Three Rivers Federal Credit Union*  2006 WL 3408128, at *6 (N.D. Ind. Nov. 27, 2006) (discussing *Forrester*).

an open bag in the break room; employee offered evidence that such food was considered abandoned and available to anyone who wanted it, supporting inference that stated reason could not have been the real reason for firing). A reasonable jury could conclude that INDOT's proffered reason for demoting Monroe – his offensive language – was pretextual. Monroe's claim of sex discrimination cannot be resolved on summary judgment.

II.     *Title VII Retaliation Claim*

Title VII also prohibits an employer from retaliating against an employee for engaging in a protected act, such as reporting discrimination or harassment. 42 U.S.C. § 2000e-3(a); *Moser v. Indiana Dep't of Corrections*, 406 F.3d 895, 903 (7th Cir. 2005). Monroe claims that INDOT retaliated against him for reporting what he believed to be sexual harassment by Hays to INDOT's Equal Employment Officer, Carlos Castillo.

A plaintiff may prove a claim of retaliation using either the direct or indirect methods of proof. Monroe advances his retaliation claim using the direct method of proof. The direct method requires the plaintiff to show that he engaged in protected activity and suffered a materially adverse employment action as a result. *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002). A plaintiff proceeding under the direct method must normally show that (1) he engaged in statutorily protected activity, (2) he suffered a materially adverse action, and (3) there exists a causal connection between the two. *Moser*, 406 F.3d

at 903-05; *Sitar v. Indiana Dep't of Transportation*, 344 F.3d 720, 728 (7th Cir. 2003); *Stone*, 281 F.3d at 644. Monroe suffered an adverse employment action when he was denied a promotion. INDOT argues that (1) Monroe did not engage in statutorily protected activity, and (2) even if he did, there was no causal connection between that activity and his failure to be promoted in July 2004.

INDOT argues that Monroe's alleged oral complaint that he was subjected to sexual harassment by Hays, made to the Equal Employment Officer during his interview of Monroe, was not protected activity because it was "utterly baseless." Claims that are "utterly baseless" or "groundless" and not made in good faith do not receive protection under Title VII. *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 890 (7th Cir. 2004). However, the report of findings on Hays' sexual harassment complaint against Monroe can easily be read as stating that Hays and Monroe were equally culpable and that both deserved discipline. That evidence indicates that Monroe's alleged complaint need not be deemed "utterly baseless," at least on summary judgment.

Monroe's retaliation claim must fail, however, because he has not put forward sufficient evidence to establish a causal connection between the statutorily protected activity he says he engaged in and his failure to be promoted in July 2004. Monroe claims that Castelo rescinded his promotion because Hays had "raised [Cain] about it" and made some phone calls "downtown" to INDOT headquarters. Castelo told Monroe that Hays had called him and stated that if he

-14-

liked his job then he had "better not recommend [Monroe] for any promotions." Castelo further stated, "I tried to promote you . . . . It's beyond me." Assuming those statements are true, as the court must in deciding the motion for summary judgment, there is still no evidence that Hays, Castelo, or Jeffers knew of Monroe's alleged remark to the Equal Employment Officer that he felt sexually harassed by Hays.[3] In fact, Monroe did not file a sexual harassment complaint and there is no evidence that his remark was pursued any further. Summary judgment is warranted against a party who fails to offer evidence sufficient to establish an essential element of his case and on which he will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In the absence of any evidence that Hays knew of Monroe's complaint, it appears that Hays' phone calls "downtown" were instead made because of her personal animosity towards Monroe resulting from their break-up. Further, there is no evidence that the ultimate decision-maker who denied Monroe's promotion, Tim Jeffers, knew anything of Monroe's supposed complaint of sexual harassment. Monroe expressed concern that Hays would use her authority to "put his head on a platter" during his conversation with Jeffers, but this conversation took place before Monroe was aware of the sexual harassment charge that had been filed against him and before he allegedly engaged in the protected speech during the Castillo interview investigating those charges. The prohibition on retaliation in

---

[3] Monroe himself could not recall the substance of his complaint to the Equal Employment Officer regarding Hays. Monroe Dep. at 20. There is no independent documentation of such a comment or complaint.

Title VII applies to retaliation for statutorily protected activity. It does not apply to "retaliation" based on personal animosities, such as the break-up between Hays and Monroe.

A plaintiff must show that the decision-maker knew he had engaged in the statutorily protected activity that he claims was the cause of unlawful retaliation. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004). Jeffers' affidavit states: "promoting Mr. Monroe was not a good idea in light of the troubling circumstances that had surfaced . . . with respect to the personal relationship between Mr. Monroe and Eryn Hays." There is no evidence that Jeffers rescinded Monroe's promotion because of his statutorily protected activity, or that Jeffers even knew of that activity. As INDOT points out, engaging in a personal relationship with another employee is not protected activity under Title VII. Jeffers could lawfully decide not to promote Monroe because of his relationship with Hays. Indeed, Jeffers explained in his affidavit that "only a few months had passed since Mr. Monroe's demotion. In my judgment, not enough time had passed in order for Mr. Monroe to be eligible for consideration for promotion." In the absence of evidence that would allow a reasonable jury to find that the decision-maker or anyone influencing the decision knew of the alleged protected activity, the jury could not find that the decision was motivated by a desire to retaliate against activity protected by Title VII.

Monroe is free to claim that his failure to be promoted was a part of the discriminatory punishment he was subjected to because of his relationship with Hays, but he cannot defeat summary judgment on his retaliation claim. Because no jury could reasonably find that Monroe has established his prima facie case of retaliation, INDOT's motion for summary judgment as to this claim must be granted. See *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 560 (7th Cir. 2004); *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002).

*Conclusion*

Defendant's motion for summary judgment (Docket No. 23) is granted as to Monroe's retaliation claim and denied as to his sex discrimination claim. The case remains set for trial on February 20, 2007, with a final pretrial conference on February 9, 2007 at 9:00 a.m.

So ordered.

Date: January 19, 2007

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Philip J. Gibbons Jr.
HASKIN LAUTER LARUE & GIBBONS
pgibbons@hllglaw.com

Juliana B. Pierce
INDIANA STATE ATTORNEY GENERAL
Julie.Pierce@atg.in.gov

Mark Thomas Robbins
HASKIN LAUTER LARUE & GIBBONS
mrobbins@hlllaw.com